**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| HORIZON BLUE CROSS BLUE SHIELD OF NEW JERSEY, | |
| Plaintiff, | Civil Action No. 17-571 (MAS) (TJB) |
| v. | **AMENDED MEMORANDUM OPINION** |
| FOCUS EXPRESS MAIL PHARMACY, INC., et al., | |
| Defendants. | |

**SHIPP, District Judge**

This matter comes before the Court on Defendants Focus Express Mail Pharmacy, Inc. ("Focus Express"), Joel D. Shpigel, R.Ph. ("Shpigel"), and Ian D. Essen, R.Ph.'s ("Essen") (collectively, "Defendants") Motion to Dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b). (ECF No. 7.) Plaintiff Horizon Blue Cross Blue Shield of New Jersey ("Plaintiff") filed opposition (ECF No. 11), and Defendants replied (ECF No. 12). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, the Court DENIES Defendants' Motion to Dismiss.[1]

---

[1] The Court amends the Memorandum Opinion to correct formatting and citations.

## I.    **Background**[2]

Plaintiff "brings this action to recover in excess of [t]en [m]illion dollars it paid [to] Defendants as a result of their operation of an unlicensed mail order pharmacy in New Jersey." (Compl. ¶ 1, ECF No. 1-1.) Plaintiff "offers health [insurance] benefit plans and policies of insurance that provide prescription drug benefits provided by eligible providers to its members[3] in New Jersey." (*Id.* ¶ 18.) Plaintiff's benefit plans "offer a variety of pharmacy and prescription drug benefits based on the type of pharmacy and service provided, and may restrict or exclude services by mail order pharmacies like Focus Express." (*Id.*)

"Focus Express[4] is an 'out-of-network' or non-participating [mail order] pharmacy that has no contract with [Plaintiff]" and is owned and operated by [Shpigel[5] and Essen[6]] in Pennsylvania. (*Id.* ¶¶ 2, 20.) Defendants operated an unlicensed pharmacy in New Jersey from 2002 through 2011.[7] (*Id.* ¶¶ 1, 28.) As part of their business, Defendants solicit and deliver prescriptions to Plaintiff's members that reside in New Jersey. (*Id.* ¶ 29) To procure payment from Plaintiff,

---

[2] For the purpose of this motion, the Court accepts the facts alleged in the complaint as true. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). The allegations included in this section are taken directly from the Complaint. (ECF No. 1-1.)

[3] The Court notes that the Complaint interchanges the terms "members" and "subscribers."

[4] Focus Express was formed in 2002. (*Id.* ¶ 28.)

[5] Joel D. Shpigel, R.Ph., is a pharmacist licensed in Pennsylvania. (Compl. ¶ 11, ECF No. 1-1.) On the date that the Complaint was filed, January 5, 2017, Shpigel was the president of Focus Express. (*Id.*)

[6] Ian D. Essen, R.Ph., is a pharmacist licensed in Pennsylvania. (Compl. ¶ 12.) On the date that the Complaint was filed, January 5, 2017, Essen was the pharmacist manager at Focus Express. (*Id.*)

[7] "Any pharmacy located in a state other than New Jersey, which ships, mails, distributes, or delivers prescription drugs or devices, in any manner, into New Jersey, must be registered with the New Jersey State Board of Pharmacy." (Compl. ¶ 26.) Focus Express did not register with the New Jersey State Board of Pharmacy until September 27, 2011. (*Id.* ¶ 4.)

Defendants submitted health insurance claims with information representing eligibility for payment and the charges for the prescription drugs dispensed. (*Id.* ¶ 6.)

Plaintiff's members are required to pay the full cost of prescription drugs to the pharmacy if the members use an out-of-network pharmacy, such as Focus Express. (*Id.* ¶ 21.) Plaintiff's members must "fill out and submit a Prescription Drug Reimbursement form [('the form')] under their prescription drug benefit plan." (*Id.*) When Plaintiff receives the form, it "processes the claim pursuant to the terms of the [member's] plan benefits and pays the reimbursement directly to the [member]." (*Id.*) "[P]ursuant to the terms of [Plaintiff's] benefit plans, [Plaintiff] only provides benefits for services rendered by eligible providers licensed to provide services [and Plaintiff's] benefit plans explicitly exclude coverage for services rendered by unlicensed providers." (*Id.* ¶ 27.)

Plaintiff alleges that Defendants "promised new patients a [f]ifty [d]ollar . . . gift card and other remuneration in return for the submission of prescriptions to Defendant[s'] out-of-network pharmacy." (*Id.* ¶ 31.) "To induce [Plaintiff's members] to use their pharmacy, [Defendants] advised [members] that they would take on all administrative tasks related to the submission of prescription drug claims to [Plaintiff]" and advised patients that Defendants would "bill [the members'] insurance company[.]" (*Id.* ¶ 37.) Defendants advised patients "that they would not be required to pay for their prescription at the time of purchase [and] [o]nce [members] qualify as patient[s] of Focus Express . . . [Focus Express] will wait for the reimbursement and [] will accept the insurance company's 80% payment as payment in full[.]" (*Id.* ¶ 38.)

"Focus Express waived all patient financial responsibility in order to induce the referral of prescriptions to Defendant[s'] out-of-network pharmacy." (*Id.* ¶ 42.) "Focus Express . . . knew that insurance companies, like [Plaintiff], do not reimburse subscribers for the full price of prescription

medications obtained through an out-of-network pharmacy." (*Id.* ¶ 44.) "Defendants' intentional waiver of patient responsibility resulted in the knowing submission of claims to [Plaintiff.]" (*Id.* ¶ 47.) Plaintiff alleges that these claims "misrepresented the amounts charged to the patient[s] for services and sought to recover amounts for which [Defendants] had no agreement or legal basis to charge." (*Id.*)

Defendants submitted "fraudulent health insurance claims which misrepresented [Focus Express's] eligibility for payment and the actual charge for the drugs dispensed." (*Id.* ¶ 6.) Plaintiff alleges that "Focus Express used a standard medical billing form commonly known as the CMS1500." (*Id.* ¶ 53.) This form "is used by medical professionals, like physicians, to report professional services and supplies; it is not appropriate for pharmacies to use this form to submit claims for prescription drugs." (*Id.*) Plaintiff alleges that by submitting the claims on the improper forms, Defendants concealed information and circumvented Plaintiff's system for processing Focus Express's pharmacy claims. (*Id.* ¶ 54.) Additionally, Plaintiff alleges that "Focus Express charged and received payments for in excess of what would have been paid had the claim been properly submitted and processed, including charges that were sometimes fifty [] to seventy [] times the usual charge for the drug." (*Id.* ¶ 55.) "As a result of [Focus Express's] operation of an unlicensed pharmacy, [Focus Express's] payments to [Plaintiff's] members and [Focus Express's] submission of false insurance claims, [Plaintiff] paid [Defendants] $10,052,516 from January 2006 through September 2, 2011." (*Id.* ¶ 7.)

On January 6, 2017, Plaintiff filed a five-count Complaint against Defendants in New Jersey state court. (Notice of Removal, Ex. A, ECF No. 1-1.) The Complaint alleged counts for: (1) insurance fraud under the New Jersey Insurance Fraud Prevention Act ("NJIFPA") ("Count One"); (2) common law fraud ("Count Two"); (3) tortious interference ("Count Three");

4

(4) unjust enrichment ("Count Four"); and (5) negligent misrepresentation ("Count Five"). On January 27, 2017, Defendants removed this matter to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. (Notice of Removal, ECF No. 1.) On February 28, 2017, Defendants moved to dismiss with prejudice all Counts of the Complaint for failure to state a claim and failure to plead adequate damages within the applicable statute of limitations. (ECF No. 7-2.)

## II.    **Legal Standard**

On a motion to dismiss for failure to state a claim, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). A district court is to conduct a three-part analysis when considering a Rule 12(b)(6) motion to dismiss. *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must "review[] the complaint to strike conclusory allegations[.]" *Id.* The court must accept as true all of the plaintiff's well-pleaded factual allegations and "construe the complaint in the light most favorable to the plaintiff[.]" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). In doing so, the court is free to ignore legal conclusions or factually unsupported accusations that merely state "the-defendant-unlawfully-harmed-me[.]" *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678).

Additionally, "[i]ndependent of the standard applicable to Rule 12(b)(6) motions, [Federal Rule of Civil Procedure 9(b) ('Rule 9(b)')] imposes a heightened pleading requirement of factual particularity with respect to allegations of fraud." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002); Fed. R. Civ. P. 9(b). "[C]onclusory allegations are not sufficient to withstand Rule 9(b)," and instead "the circumstances constituting fraud . . . shall be stated with particularity." *Grant v. Turner*, 505 F. App'x 107, 111 (3d Cir. 2012); *Hemy v. Perdue Farms, Inc.*, No. 11-888, 2013 WL 1338199, at *9 (D.N.J. Mar. 31, 2013). "To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007).

## III.    Discussion

### A.    Statute of Limitations

Defendants argue that all Counts are barred by the applicable six year statute of limitations.[8] (Defs.' Moving Br. 11, 18-19.) Specifically, Defendants argue that "any misrepresentations by [Defendants,] which resulted in either an investigation or payment prior to January 6, 2011 are . . . time-barred." (*Id.* at 12-13.) In New Jersey, the applicable statute of limitations for the alleged claims is six years from the date that the injury allegedly occurred. N.J.S.A. 17:33A-7(e); N.J.S.A. 2A:14-1. The Third Circuit "permits a limitations defense to be raised by a motion under Rule 12(b)(6) [] only if 'the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations.'" *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002) (quoting *Hanna v. U.S. Veterans' Admin. Hosp.*, 514

---

[8] Defendants argue that all Counts are barred by the applicable six year statute of limitations. (Defs.' Moving Br. 11, 17-19.) The Court, however, need not address each statutory provision independently because the analysis remains the same.

F.2d 1092, 1094 (3d Cir. 1975)). "If the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)." *Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 (3d Cir. 1978).

Here, the Complaint, which was filed on January 6, 2017, alleges that the final payment to Defendants, or the final injury, occurred on September 2, 2011. (Compl. ¶¶ 7, 117.) Based on the face of the Complaint, the allegations with respect to the final injury fell within the relevant statutory period.[9] Accordingly, the Court finds that Defendants may not be afforded dismissal of the Complaint under Rule 12(b)(6) based on the statute of limitations argument. *See Bethel*, 570 F.2d at 1174.

### B.    Insurance Fraud (Count One)

Count One of the Complaint is a claim for insurance fraud pursuant to the NJIFPA. (Compl. ¶ 77.) Defendants argue that Plaintiff fails to state a claim of violation under the NJIFPA and "allege sufficient facts in support of the claims for fraud in order to satisfy the heightened pleading standards of [Rule 9]."[10] (Defs.' Moving Br. 8-9.) The NJIFPA was enacted "to confront aggressively the problem of insurance fraud . . . [by] requiring the restitution of fraudulently obtained insurance benefits[.]" N.J.S.A. 17:33A-2. Pursuant to the NJIFPA, a person or entity violates the law if it:

> [p]resents or causes to be presented any written or oral statement as part of, or in support of or opposition to, a claim for payment or other benefit pursuant to an insurance policy . . . knowing that the statement contains any false or misleading information concerning any fact or thing material to the claim.

---

[9] Any further analysis is more appropriately suited for a later stage of litigation.

[10] The Court notes that Defendants refer to the NJIFPA as the "New Jersey Insurance Fraud Protection Act." (Defs.' Moving Br. 11, ECF No. 7-2.)

N.J.S.A. 17:33A-4(a)(1). Thus, to allege a claim under the NJIFPA, "[a] [p]laintiff must essentially [allege] (1) knowledge, (2) falsity, and (3) materiality." *Horizon Blue Cross Blue Shield of N.J. v. Transitions Recovery Program*, No. 10-3197, 2015 WL 8345537, at *4 (D.N.J. Dec. 8, 2015). "Unlike common law fraud, proof of fraud under the IFPA does not require proof of reliance on the false statement or resultant damages . . . nor proof of intent to deceive." *Id.* (citation omitted). An NJIFPA claim requires much less thorough pleading than a common law fraud claim, and "[t]he New Jersey Supreme Court [has also] held that '[courts] must construe the [NJIFPA]'s provisions liberally to accomplish the Legislature's broad remedial goals.'" *Lincoln Nat. Life Ins. Co. v. Schwarz*, No. 09-3361, 2010 WL 3283550, at *16 (D.N.J. Aug. 18, 2010) (quoting *Liberty Mut. Ins. Co. v. Land*, 892 A.2d 1240, 1246 (N.J. 2006)). Additionally, "[a]ny insurance company damaged as the result of a violation of any provision of [the NJIFPA] may sue [] in any court of competent jurisdiction to recover compensatory damages, which shall include reasonable investigation expenses, costs of suit[,] attorney's fees . . . [and] treble damages[.]" N.J.S.A. 17:33A-7(a)-(b).

To state a claim under the first prong, a plaintiff must allege that the defendants had knowledge. *LM Ins. Corp. v. All-Ply Roofing Co.*, No. 14-4723, 2017 WL 1323196, at *5 (D.N.J. Apr. 5, 2017). The knowledge prong may be fulfilled when a defendant knowingly submits a false bill or statement. *See Va. Sur. Co. v. Macedo*, No. 08-5586, 2011 WL 1769858, at *16 (D.N.J. May 6, 2011). Here, the Complaint alleges that Defendants "did not disclose the usual charge for the drug dispensed, the amount paid by the patient, the amount [Defendants] contributed to the charge by waiving patient responsibility or the net amount due . . . , [and] misrepresented that the services were provided in the home rather than by a pharmacy." (Compl. ¶ 54.) Furthermore, the Complaint alleges that "Focus Express charged and received payments . . . in excess of what would

have been paid had the claim been properly submitted and processed, including charges that were sometimes fifty [] to seventy [] times the usual charge for the drug." (*Id.* ¶ 55.) The Court finds that Plaintiff alleges sufficient facts to establish the knowledge prong.

To state a claim under the second prong, falsity, a plaintiff must allege that the defendants submitted false statements. *Horizon*, 2015 WL 8345537, at *4. A false bill or misleading statement constitutes a false statement under the NJIFPA and fulfills the second requirement. *Va. Sur. Co., 2011 WL 1769858, at *16* (finding that a complaint stating that the defendants "prepared a writing containing materially false statements . . . in order to support [their] insurance claims" was sufficient to state a claim under the NJIFPA). Here, the Complaint alleges that Defendants submitted false claims by "misrepresent[ing] the type of medication provided to patients by using HCPCS code J3490" and knowingly misrepresenting the place of service on claim forms. (Compl. ¶¶ 59, 62.) The Complaint alleges that the HCPCS code J3490 identifies injectable drugs, and Defendants used the code to describe "prescription medication that was dispensed in a tablet form." (*Id.* ¶¶ 59-60.) Plaintiff, therefore, alleges that Focus Express "misrepresented that the services were performed at the patient's home and not in (or by) a pharmacy." (*Id.* ¶ 64.) The Court finds that Plaintiff alleges sufficient facts to establish falsity.

To state a claim under the third prong, a plaintiff must allege that the defendants' misstatements are material. *Horizon*, 2015 WL 8345537, at *4. "An insured's misstatement is material if[,] when made[,] a reasonable insurer would have considered the [mis]represented fact relevant to its concerns and important in determining its course of action." *Id.* at *7 (quoting *Longobardi v. Chubb Ins. Co. of N.J.*, 582 A.2d 1257, 1263 (N.J. 1990)). Here, the Complaint alleges that Defendants' false claims were material to Plaintiff because Plaintiff paid Defendants based on the claim forms submitted. (*See* Compl. ¶¶ 76, 78.) The Complaint further alleges that

"[t]he information concealed and not disclosed by Defendants was material to their insurance claims, affected their right to payment, and, if disclosed, would have caused [Plaintiff] to deny payment for their insurance claims." (*Id.*) The Court finds that Plaintiff alleges sufficient facts to establish that Defendants' misstatements are material. Accordingly, the Court concludes that the Complaint states a plausible claim against Defendants for insurance fraud under the NJIFPA, and denies Defendants' Motion to Dismiss as to Count One.

### C.     Common Law Fraud (Count Two)

Count Two of the Complaint is a claim for common law fraud against Defendants. (Compl. ¶ 82.) Defendants argue that Plaintiff fails to allege sufficient facts to establish a *prima facie* claim for common law fraud. (Defs.' Moving Br. 13.) "Under New Jersey law, the elements of common law fraud are: '(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages.'" *Va. Sur. Co.*, 2011 WL 1769858, at *17 (quoting *Banco Popular N. Am. v. Gandi*, 876 A.2d 253, 260 (N.J. 2005)). As outlined above, a plaintiff alleging fraud must comply with Rule 9(b) by "inject[ing] precision and some measure of substantiation into [its] allegations[.]" *Mars Inc. v. JCM Am. Corp.*, No. 05-3165, 2006 WL 1704469, at *5 (D.N.J. June 14, 2006) (quoting *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984)).

Here, the Complaint alleges that: (1) Defendants submitted "fraudulent health insurance claims which misrepresented [Focus Express's] eligibility for payment and the actual charge for the drugs . . . dispensed" (Compl. ¶ 6); (2) "Focus Express knowingly misrepresented the type of medication provided to patients by using HCPCS code J3490" and knowingly misrepresented the place of service on claim forms (*id.* ¶¶ 59, 62); (3) by submitting the claims on fraudulent forms,

Defendants concealed information and circumvented Plaintiff's system for processing pharmacy claims; (*id.* ¶ 54); (4) "Defendants' intentional waiver of patient responsibility resulted in the knowing submission of claims to [Plaintiff] which misrepresented the amounts charged to the patient[s] for services" (*id.* ¶ 47); and (5) Plaintiff reasonably relied on the claims from Defendants to procure payment to Focus Express that resulted in Plaintiff paying Defendants $10,052,516 from January 2006 through September 2, 2011 (*id.* ¶¶ 7, 84). Accordingly, the Court concludes that the Complaint states a plausible claim for common law fraud under New Jersey law, and denies Defendants' Motion to Dismiss as to Count Two. *See Va. Sur. Co.*, 2011 WL 1769858, at *17 (finding that the alleged submission of false insurance claims with the intent to secure compensation is sufficient to plead a claim of common law fraud).

### D.    Tortious Interference (Count Three)

Count Three of the Complaint alleges a claim for tortious interference. (Compl. ¶ 87.) Defendants argue that Plaintiff fails to state a claim for tortious interference because Plaintiff has failed to plead that Defendants acted with malice[11] and Plaintiff has failed to plead damages. (Defs.' Moving Br. 15-16.) To plead a tortious interference claim, a plaintiff must allege:

> (1) a plaintiff's reasonable expectation of economic benefit or advantage, (2) the defendant's knowledge of that expectancy, (3) the defendant's wrongful, intentional interference with that expectancy, (4) in the absence of interference, the reasonable probability that the

---

[11] The Court notes that "malice is defined to mean that the harm was inflicted intentionally and without justification or excuse." *Printing Mart-Morristown v. Sharp Elecs. Corp.*, 563 A.2d 31, 37 (N.J. 1989); *see Baxter Healthcare Corp. v. HQ Specialty Pharma Corp.*, 157 F. Supp. 3d 407, 420 (D.N.J. 2016). "Malice in this context 'does not require ill will,' but instead means that the defendants intentionally inflicted harm 'without justification or excuse.'" *Baxter Healthcare Corp.*, 157 F. Supp. 3d at 420 n.38 (quoting *DiGiorgio Corp. v. Mendez & Co.*, 230 F. Supp. 2d 552, 564-65 (D.N.J. 2002)).

plaintiff would have received the anticipated economic benefit, and
(5) damages resulting from the defendant's interference.

*Fineman v. Armstrong World Indus., Inc.*, 980 F.2d 171, 186 (3d Cir. 1992); *see Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 212 (3d Cir. 2009).

Here, the Complaint alleges that Plaintiff's health insurance "plans may limit benefits to prescriptions dispensed by 'participating' pharmacies which have contracted with [Plaintiff] to provide prescription medications at contract rates." (Compl. ¶ 19.) Plaintiff further alleges that "its members are required to pay the full cost of the prescription drug to the pharmacy" if the members use an out-of-network pharmacy, like Focus Express. (*Id.* ¶¶ 20-21.) The Complaint alleges that "Defendants . . . interfered with the contracts pursuant to which [Plaintiff] provided health benefits to individuals for whom Defendants provided services and submitted health insurance claims to [Plaintiff]." (*Id.* ¶ 100.) Plaintiff alleges that "Focus Express charged and received payments for in excess of what would have been paid had the claim been properly submitted and processed, including charges that were sometimes fifty [] to seventy [] times the usual charge for the drug." (*Id.* ¶ 55.) Finally, the Complaint alleges that Plaintiff "has suffered damages including, but not limited to, the payment of excessive charges for repeated and unnecessary provision of products[,] the disruption of its benefits plans and networks[,]" and sustained an economic loss that resulted in a total payment of $10,052,516 to Defendant from January 2006 through September 2, 2011. (*Id.* ¶¶ 7, 101.)

The Court finds that Plaintiff pleads sufficient factual allegations to demonstrate that it would have received an economic advantage had Defendants properly submitted and processed the claims, and Defendants' interference resulted in damages to Plaintiff. S*ee Florian Greenhouse, Inc. v. Cardinal IG Corp.*, 11 F. Supp. 2d 521, 525 (D.N.J. 1998) (finding tortious interference where the defendant acted intentionally and wrongfully, interfered with the contract, and received

economic benefit). Accordingly, the Court concludes that the Complaint states a plausible claim against Defendants for tortious interference, and denies Defendants' Motion to Dismiss as to Count Three.

### E.     Unjust Enrichment (Count Four)

Count Four of the Complaint alleges a claim for unjust enrichment. (Compl. ¶ 103.) Defendants argue that Plaintiff fails to state a claim for unjust enrichment because "Plaintiff's claim for unjust enrichment is solely based on its claims of fraud and negligent misrepresentation." (Defs.' Moving Br. 18.) "New Jersey does not recognize unjust enrichment as an independent tort cause of action." *Warma Witter Kreisler, Inc. v. Samsung Elecs. Am., Inc.*, No. 08-5380, 2009 WL 4730187, at *7 (D.N.J. Dec. 3, 2009) (citing *Castro v. NYT Television*, 851 A.2d 88, 98 (N.J. Super. Ct. App. Div. 2004) (explaining that "the role of unjust enrichment in the law of torts is limited for the most part to its use as a justification for other torts such as fraud or conversion")). "Rather, in the tort setting, 'an unjust enrichment claim is essentially another way of stating a traditional tort claim (i.e., if defendant is permitted to keep the benefit of his tortious conduct, he will be unjustly enriched).'" *Id.* (quoting *Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*, 171 F.3d 912, 936 (3d Cir. 1999)). Thus, to state a claim for unjust enrichment under New Jersey law, "a plaintiff must show that [the] defendant[s] received a benefit and that retention of that benefit without payment would be unjust." *VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519, 526 (N.J. 1994) (citations omitted). "The unjust enrichment doctrine requires that [a] plaintiff show that it expected remuneration from the defendant[s] at the time it performed or conferred a benefit on defendant[s] and that the failure of remuneration enriched defendant[s] beyond [their] contractual rights." *Id.*

Here, the Complaint alleges that "[a]s a result of [] Defendants' fraud and improper billing, [] Defendants have been unjustly enriched." (Compl. ¶ 110.) The Complaint further alleges that Defendants committed fraudulent acts to procure insurance benefits, and that Defendants benefited from their fraudulent acts by receiving money for their false insurance claims. (*Id.* ¶¶ 7, 105-07.) Finally, the Complaint alleges that Defendants were paid more than what they would have been paid had the insurance claims been submitted correctly. (*Id.* ¶ 55.) The Court, therefore, finds that Plaintiff pled sufficient factual allegations to demonstrate that retention of these benefits by Defendants would be unjust in light of the alleged insurance fraud scheme. Accordingly, the Court concludes that the Complaint states a plausible claim against Defendants for unjust enrichment, and denies Defendants' Motion to Dismiss as to Count Four.

**F.      Negligent Misrepresentation (Count Five)**

Count Five of the Complaint alleges a claim for negligent misrepresentation. (Compl. ¶ 112.) Defendants argue that Plaintiff fails to plead reasonable reliance and damages. (Defs.' Moving Br. 18.) "Under New Jersey law, a claim for negligent misrepresentation requires a plaintiff to establish that [the] defendant made an incorrect statement, upon which [it] justifiably relied, causing economic loss." *Dist. 1199P Health & Welfare Plan v. Janssen, L.P.*, 784 F. Supp. 2d 508, 532 (D.N.J. 2011) (citations omitted). "[T]o prove a claim of negligent misrepresentation, a plaintiff must demonstrate that: (1) the defendant negligently provided false information; (2) the plaintiff was a reasonably foreseeable recipient of that information; (3) the plaintiff justifiably relied on the information; and (4) the false statements were a proximate cause of the plaintiff's damages." *McCall v. Metro. Life Ins. Co.*, 956 F. Supp. 1172, 1186 (D.N.J. 1996) (internal citation omitted).

Here, the Complaint alleges that "[t]he actions of [] Defendants constitute negligence, and were the direct and proximate cause of damage to Plaintiffs." (Compl. ¶ 116.) Plaintiff alleges that Defendants provided false information by submitting false statements to Plaintiff. (*Id.* ¶ 113.) Plaintiff further alleges that "Defendants knew or should have known, or were deliberately ignorant that the insurance claims submitted misrepresented the actual charges for prescriptions and that this would cause Plaintiff to issue payment to [] Defendants that they were not entitled to receive." (*Id.*) The Complaint also alleges that Plaintiff reasonably relied on the claims to provide payment to Focus Express, forcing Plaintiff to sustain an economic loss that resulted in a total payment of $10,052,516 to Defendant from January 2006 through September 2, 2011. (Compl. ¶¶ 7, 84.) Accordingly, the Court concludes that the Complaint states a plausible claim against Defendants for negligent misrepresentation, and denies Defendants' Motion to Dismiss as to Count Five.

**IV.    Conclusion**

For the reasons set forth above, the Court denies Defendants' Motion to Dismiss. An order consistent with this Memorandum Opinion will be entered by the Court.

s/ Michael A. Shipp
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

**Dated:** August 16, 2017