NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

HORIZON BLUE CROSS BLUE SHIELD OF NEW JERSEY,

    Plaintiff,

v.

FOCUS EXPRESS MAIL PHARMACY, INC., *et al.*,

    Defendants.

Civil Action No. 17-0571 (MAS) (TJB)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

    This matter comes before the Court upon Defendants Focus Express Mail Pharmacy, Inc.; Ian D. Essen, R.Ph.; Nicholas Braccia; Lisa Braccia; Joel D. Shpigel, R.Ph.; and Toby Shpigel's (collectively, "Defendants") Motion to Dismiss. (Defs.' Moving Br., ECF No. 42.) Plaintiff Horizon Blue Cross Blue Shield of New Jersey ("Plaintiff") opposed (Pl.'s Opp'n Br., ECF No. 44), and Defendants replied (Defs.' Reply Br., ECF No. 48). The Court has carefully considered the parties' submissions, and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth herein, Defendants' Motion is denied.

# I. BACKGROUND[1]

The Court previously summarized the primary factual allegations giving rise to the instant suit. (*See* Aug. 16, 2017 Am. Mem. Op., ECF No. 18.) The Court, accordingly, incorporates those allegations into this Memorandum Opinion, and only recites the facts as necessary to provide context and decide the instant motion. The Court also recites the procedural history of the matter as necessary.

## A. Factual Background

Plaintiff is a health service corporation that "administers and/or insures health care benefits, including prescription drug benefits" through a number of health care plans. (Am. Compl. ¶ 8, ECF No. 39.) Plaintiff initiated this lawsuit on January 6, 2017 in New Jersey state court and asserted five counts against Joel D. Shpigel, R.Ph. ("Joel"), Ian D. Essen, R.Ph. ("Ian"), and Focus Express Mail Pharmacy, Inc. ("Focus Express"). (*See* Notice of Removal, Ex. A. ("Compl."), ECF No. 1-1.) Plaintiff brought this action seeking to recover over $10,000,000 it paid to Defendants "as a result of their operation of an unlicensed mail order pharmacy in New Jersey . . . ." (Am. Compl. ¶ 1.) The matter was removed to this Court on January 27, 2017. (Compl.)

Joel is Co-founder and Chief Executive Officer of Focus Express, and his wife, Toby R. Shpigel ("Toby") was a "phantom employee" of Focus Express.[2] (Am. Compl. ¶¶ 11, 15.) Nicholas Braccia ("Nicholas") is Co-founder and President of Focus Express and a "hands on businessman," and his wife, Lisa Braccia ("Lisa") was another "phantom employee" of Focus

---

[1] For the purposes of this motion, the Court accepts as true the facts alleged in the Amended Complaint. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (citation omitted) (stating that, on a Rule 12(b)(6) motion to dismiss, courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief").

[2] Plaintiff does not define "phantom employee." (*See generally* Am. Compl.)

Express. (*Id.* ¶¶ 13, 14.) Ian is a licensed pharmacist and the pharmacy manager of Focus Express. (*Id.* ¶ 12.)

Plaintiff alleges that Defendants perpetrated a scheme to submit "false and fraudulent insurance claims to [Plaintiff] for prescription medication and supplies." (*Id.* ¶ 1.) Plaintiff's allegations in the Amended Complaint regarding this scheme are the same allegations from Plaintiff's initial Complaint. (*Compare* Compl., *with* Am. Compl.)

Plaintiff's Amended Complaint now asserts facts related to trusts and transfers of assets into those trusts. (Am. Compl. ¶¶ 80-95, 142-54.) Joel and Toby are the sole trustees of the Joel D. Shpigel Revocable Trust and the Toby R. Shpigel Revocable Trust (collectively, the "Shpigel Trusts"). (*Id.* ¶ 16.) Five days after the Court denied Defendants' previous Motion to Dismiss, Joel and Toby transferred one piece of real estate located in New Jersey (the "Margate Property"), and two pieces of real estate located in Florida (the "Highland Beach Property" and the "Boynton Beach Property") to the Shpigel Trusts. (*Id.* ¶¶ 85-86.) Specifically, on August 21, 2017, Joel and Toby transferred the Margate Property, the Highland Beach Property, and the Boynton Beach Property to the Shpigel Trusts for $1, $10, and $10, respectively, despite the properties having been purchased for $780,000, $554,000, and $525,000, respectively. (*Id.*)

Around September 13, 2017, Defendants ceased doing business as Focus Express and started Focus Medical Supply Pharmacy ("Focus Medical"), creating a website for the latter. (*Id.* ¶ 89.) In December 2017, Focus Express, Joel, and Nicholas registered Focus Medical with the Pennsylvania Secretary of State, and Focus Express and Joel announced that "Focus Express Mail Pharmacy is now Focus Medical Supply Pharmacy!" on social media. (*Id.* ¶¶ 91-92.)

Plaintiff's Amended Complaint asserts six counts against each of the Defendants. (*Id.* ¶¶ 97-154.) Counts One through Five—Insurance Fraud, Common Law Fraud, Tortious Interference, Unjust Enrichment, and Negligent Misrepresentation—are the same claims as in the

initial Complaint, and Plaintiff makes the exact same allegations in the Amended Complaint. (*Compare* Compl., *with* Am. Compl. ¶¶ 97-141.) Plaintiff, however, adds Count Six, pursuant to the New Jersey Uniform Fraudulent Transfer Act ("NJUFTA"), N.J.S.A. §§25:2-25(a), (b), alleging that "Defendants have engaged in a scheme to hide assets in violation of the NJUFTA." (Am. Compl. ¶ 145.) Plaintiff alleges that Defendants paid Toby and Lisa through Focus Express, despite Toby and Lisa not owning, providing services to, or being employed by Focus Express. (*Id.* ¶ 146.) Plaintiff further alleges that the sales of the Margate Property, Highland Beach Property, and the Boynton Beach Property were in violation of the NJUFTA, because they were made with "actual intent to hinder, delay, or defraud present and future creditors" and "without receiving reasonably equivalent value in exchange for the transfer . . . ." (*Id.* ¶¶ 150-51.) Plaintiff contends that the transfers placed the properties beyond Plaintiff's reach. (*Id.* ¶ 153.)

**B.  Procedural History**

On August 16, 2017, the Court denied Focus Express, Joel, and Ian's (collectively, "Original Defendants") Motion to Dismiss Plaintiff's Complaint. (Order, ECF No. 16.) Original Defendants and Plaintiff engaged in settlement efforts, but those efforts were not fruitful. According to Plaintiffs, "[p]rior to the commencement of written discovery, [Plaintiff] learned new information regarding Focus Express and the persons who benefitted from the fraud." (Pl.'s Opp'n Br. 4, ECF No. 44.) Plaintiff, accordingly, moved to amend the complaint on June 8, 2018 (Pl.'s Mot. to Amend, ECF No. 30), and Original Defendants opposed Plaintiff's motion (Original Defs.' Opp'n Br., ECF No. 32). On December 19, 2018, Judge Tonianne J. Bongiovanni, U.S.M.J., granted Plaintiff's Motion to Amend, and Plaintiff filed the Amended Complaint the next day. (Letter Order 4, ECF No. 38.)

On February 18, 2019, Defendants filed the instant motion, advancing many of the same arguments Original Defendants advanced in their opposition to Plaintiff's Motion to Amend and

4

which Judge Bongiovanni rejected. (*Compare* Defs.' Moving Br., *with* Defs.' Opp'n Br.) On March 18, 2019, Plaintiff opposed Defendants' motion (Pl.'s Opp'n Br.), and, on April 4, 2019, Defendants replied (Defs.' Reply Br.).

## II. LEGAL STANDARD

District courts must consider a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6)[3] under a three-part analysis. First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Second, it must accept as true all of a plaintiff's well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff, while setting aside conclusory allegations proffered in the complaint. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). Third, the court "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679).

## III. DISCUSSION

Defendants move to dismiss Counts One through Five as to Nicholas, Toby, and Lisa (collectively, "New Defendants"), arguing that Plaintiff failed to plead a required element for each cause of action. (*See* Defs.' Moving Br. 13-16.) Defendants also contend that the same counts as to New Defendants are barred by the relevant statute of limitations. (*Id.* at 11-13.) Defendants additionally move to dismiss Count Six, arguing Plaintiff's NJUFTA claim is deficient for several reasons. (*Id.* at 16-19.)

Plaintiff opposes, contending its claims are not barred by the applicable statute of limitations and that each claim is not deficient. (*See generally* Pl.'s Opp'n Br.) Plaintiff repeatedly argues that Judge Bongiovanni's decision to grant its Motion to Amend is relevant and that the

---

[3] Hereinafter, all references to a "Rule" or "Rules" refer to the Federal Rules of Civil Procedure.

Court should deny Defendants' Motion to the extent it reasserts arguments Judge Bongiovanni had previously rejected. (*See id.* at 14, 19-20, 22.)

Defendants do not contest that they are reasserting many of the same arguments they advanced before Judge Bongiovanni. (*See generally* Defs.' Reply Br.) Indeed, a comparison of Defendants' Opposition to Plaintiff's Motion to Amend and Defendants' instant Moving Brief reveals the similarities in arguments.[4] (*Compare* Defs.' Moving Br., *with* Defs.' Opp'n Br.) Given this obvious repetition, Defendants suggest that the legal standard Judge Bongiovanni applied— "Judge Bongiovanni . . . analyzed the futility assertion only under the liberal standard governing motions to amend"—is different from the legal standard the Court must apply to the instant motion. (Defs.' Reply Br. 1.) The Court, however, finds Defendants' position unpersuasive based upon Judge Bongiovanni's well-reasoned opinion and recitation of the applicable law.

Judge Bongiovanni explained that, pursuant to Rule 15(a)(2), "leave to amend the pleadings is generally granted freely 'when justice so requires.'" (Letter Order 4 (*citing Foman v. Davis*, 371 U.S. 178, 182 (1962); *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000)).) She then explained that, in the absence of futility and other criteria, a motion to amend "should be liberally granted." (*Id.*) To assess futility, Judge Bongiovanni articulated and utilized the motion to dismiss

---

[4] As to Count 1, Defendants argue that Plaintiff has failed to allege facts sufficient to support a claim that New Defendants had the requisite knowledge to violate the New Jersey Insurance Fraud Protection Act. (*Compare* Original Defs.' Opp'n Br. at 12 *with* Defs.' Moving Br. at 13.) As to Count 2, Defendants aver that Plaintiff has failed to allege any specific actions taken by New Defendants in relation to the submission of claims and therefore has not pled a material misrepresentation by New Defendants. (*Compare* Original Defs.' Opp'n Br. at 16 *with* Defs.' Moving Br. at 14.) As to Count 3, Defendants assert that Plaintiff has failed to establish the elements of a tortious interference claim. (*Compare* Original Defs.' Opp'n Br. at 17 *with* Defs.' Moving Br. at 14.) As to Count 4, Defendants argue that Plaintiff has not identified any direct benefit received by New Defendants that would be required for a claim of unjust enrichment. (*Compare* Original Defs.' Opp'n Br. at 17 *with* Defs.' Moving Br. at 15.) Finally, as to Count 5, Defendants argue that Plaintiff has failed to allege that Defendants made representations of any kind to Plaintiff. (*Compare* Original Defs.' Opp'n Br. at 18 *with* Defs.' Moving Br. at 16.)

6

standard under Rule 12(b)(6). (*Id.* at 5.) *See also Alvin*, 227 F.3d at 121 ("An amendment is futile if the amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted.").

Applying the legal standards discussed above, Judge Bongiovanni concluded that, based on the Court's prior reasoning and Plaintiff's new allegations regarding New Defendants, Counts One, Two, Three, Four, and Five would survive a Rule 12(b)(6) motion. (Letter Order at 7.) Turning to Count Six, Judge Bongiovanni found that Plaintiff alleged sufficient facts "to plead a claim under the NJUFTA." (*Id.* at 8.) Specifically, Plaintiff alleged sufficient facts to establish that the transfer of property to the Shpigel Trusts "placed assets beyond the reach of the Plaintiff" and that Defendants "made the transfers for the purpose of evading any personal liability in this action." (*Id.* at 9.) Judge Bongiovanni further concluded that Plaintiff had sufficiently plead "a claim for constructive fraud." (*Id.*)

Despite Judge Bongiovanni's efforts, Defendants seek a second bite at the apple and request the Court to consider recycled arguments and depart from Judge Bongiovanni's conclusions. Defendants offer no persuasive reasons why the Court should engage in this task. Defendants' argument that Judge Bongiovanni applied a lesser legal standard because she was considering a motion to amend is not persuasive. Defendants' Opposition provided a five-page recitation of the applicable legal standard regarding a motion to amend, but the same explication of the legal standard contained no citation to legal authority to support Defendants' lesser standard proposition. (*See* Defs.' Reply Br. 1.) Significantly here, there is no indication in the Court's decision on Plaintiff's motion to amend that Judge Bongiovanni applied the futility analysis in a less rigorous manner than a court would have applied on a motion to dismiss.

As discussed above, Judge Bongiovanni's analysis regarding futility focused on whether the Amended Complaint could survive a motion pursuant to Rule 12(b)(6) and she concluded the

7

claims could survive. The Court agrees with Judge Bongiovanni's substantive conclusions and will not reconsider the same previously rejected arguments. The Court, accordingly, will only consider arguments Defendants raised for the first time in their Motion to Dismiss.

Defendants argue that Counts One, Two, Three, Four, and Five against New Defendants are barred by the applicable statute of limitations. (Defs.' Moving Br. 11-12.) Specifically, Defendants contend that New Jersey law establishes a six-year statute of limitations for these causes of actions, and Plaintiff was required to file these claims against them by September 2, 2017. (*Id.* at 12.) Defendants insist that Plaintiff alleges its last payment to Focus Express was on September 2, 2011, and Plaintiff was required to file the Amended Complaint naming New Defendants within six years of the last payment. (*Id.*) Defendants anticipate Plaintiff will attempt to rely on the discovery rule and argue Plaintiff could have discovered its claims against New Defendants through the exercise of due diligence. (*Id.* at 12-13.)

Plaintiff opposes Defendants' statute of limitations argument, contending that "Defendants' argument is both premature and without merit." (Pl.'s Opp'n Br. 11.) Plaintiff argues that it was not required to plead sufficient facts to overcome Defendants' statute of limitations argument because it is an affirmative defense. (*Id.* at 12.) Citing to Third Circuit precedent, Plaintiff contends "in the context of the discovery rule, when the pleading does not reveal when the limitations period began to run . . . the statute of limitations cannot justify Rule 12 dismissal." (*Id.* (citing *Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 835 (3d. Cir. 2011)) (omission in original).) Plaintiff insists that "[n]othing in the Amended Complaint suggests that Horizon had knowledge of the New Defendants' fraud, the full scope of its injury, or the basis for its claim at any time more than six years prior to the filing of the Amended Complaint." (*Id.* at 12-13) Plaintiff contends that to the extent Defendants argue that Plaintiff knew of its injury on the filing date of the Complaint, January 6, 2017, that argument implies that January 6, 2017 is the

8

appropriate trigger date for the statute of limitations and the Amended Complaint is timely as to New Defendants because it was filed within six months of January 6, 2017. (*Id.* at 13.)

"A statute of limitations defense is an affirmative defense that a defendant must usually plead in his [or her] answer." *Stephens v. Clash*, 796 F.3d 281, 288 (3d Cir. 2015) (internal citation omitted). A statute of limitations defense can also be raised via a Rule 12(b)(6) motion "if the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." *Id.* (quoting *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014)). The Court may grant the instant motion only "if the face of the complaint demonstrates that [Plaintiffs'] claims are untimely." *Id.* (quotations and citations omitted).

The Court previously found that a six-year statute of limitations applies to Counts One through Five. (Am. Mem. Op. 7.) The Court also previously determined that based on Plaintiff's allegations in the Complaint, the final injury to Plaintiff occurred on September 2, 2011 and the Complaint was filed within the six-year statute of limitations because it was filed on January 6, 2017. (*Id.*) Defendants contend New Jersey's discovery rule cannot save Counts One through Five because Plaintiff knew it was injured when it filed the Complaint and should have asserted claims against New Defendants at that time. (Defs.' Moving Br. 12-13.) The Court disagrees with Defendants.

Defendants' argument fails to account for all of the nuances of New Jersey's precedent on the discovery rule. In *Caravaggio v. D'Agostini*, the New Jersey Supreme Court reviewed its prior precedent on the discovery rule and stated that:

> [While those cases] reaffirm the basic principle that where a plaintiff knows of an injury and that the injury is due to the fault of another, he or she has a duty to act. However, those cases also stand for the proposition that when a plaintiff knows of an injury, and knows that it is the fault of another, but is reasonably unaware that a third party may also be responsible, the accrual clock does not begin ticking against the third party until the plaintiff has evidence that reveals his or her possible complicity.

9

765 A.2d 182, 189 (2001). Against this backdrop,[5] Plaintiff may proceed with its claims against New Defendants. Plaintiff does not allege when it discovered New Defendants were involved with the conduct giving rise to the instant suit. The Court, therefore, cannot determine from the face of the Complaint whether Plaintiff's claims against New Defendants are barred by the statute of limitations. New Defendants, accordingly, are not entitled to dismissal of Counts One, Two, Three, Four, and Five based on the statute of limitations. As the Court noted before, a deeper analysis regarding when Plaintiff discovered its injuries is more appropriate for a later stage of the litigation. (Am. Mem. Op. 7 n.9.)

IV. **CONCLUSION**

For the reasons set forth above, the Court denies Defendants' Motion to Dismiss. An Order consistent with this Memorandum Opinion will be entered.

s/ Michael A. Shipp
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

**Dated:** September 30, 2019

---

[5] The Court notes that Defendants cite *Caravaggio* in their Reply Brief, but not their Moving Brief. (*Compare* Defs.' Moving Br. *with* Defs.' Reply Br.)

10